HARDY, Judge.
This is an action by plaintiff subcontractor against defendant as contractor on construction work, praying for judgment in the sum of $1,658.21 allegedly representing the value of extra work performed over and above the contract price. Plaintiff has appealed from judgment rejecting his demands.
Defendant was the general contractor on the project for the construction of the new Winn Parish courthouse in Winnfield. Plaintiff was awarded the subcontract to furnish and install an elevator in the building in accordance with the architect’s plans and specifications. The contract price was fixed at $8,500.00. In preparation for actual installation of the elevator it was necessary to dig or drill a hole to a depth of approximately 25 feet for the accommodation of what is called the elevator jack hole.
It is the contention of plaintiff that in the course of drilling the jack hole quicksand was encountered, requiring extra labor and materials not contemplated by the subcontractor to the extent of the amount for *291 which he seeks judgment The defense is predicated upon the claim that the difficulty; encountered by plaintiff in connection with the digging of the jack hole did not constitute such an unusual condition as to justify an allowance for extra work and materials. In connection with this principal defense, it is claimed that plaintiff should and could have familiarized himself with the subsurface soil condition and been prepared for the circumstances which developed.
In his written reasons for judgment our learned brother of the district court primarily predicated his conclusion upon the ■finding that the presence of quicksand was not an unusual condition and should have been anticipated upon the basis of the subsoil data incorporated in the plans and specifications with which it was the duty of the subcontractor to fully acquaint himself. The trial judge further concluded that plaintiff failed to establish his claims by certain and acceptable proof.
Before this court the above holdings of the district judge are relied upon as specifications of error.
One of the primary considerations with respect to the determination of the issue before us requires the interpretation of what is referred to as the jack hole provision of the specifications, which reads as follows:

“JACK HOLE

“The contract price is based on the seller encountering soil free from rock, boulders, building construction members, or any obstructions or unusual conditions when installing the jack. Should such obstructions or unusual conditions be encountered, the contract price shall be increased by the amount of the additional labor at Seller’s usual rates and the actual material and incidental expense, plus 15%.” (Emphasis supplied.)
The principal question is whether the quicksand constituted an “unusual condition” under the above provision.
The gist of the defense and the basis of the finding of the district court rests upon the premise that the construction plans contained a disclosure of subsoil conditions as determined from test borings conducted by Eustis Engineering Company of Metairie, Louisiana. It is further implied that plaintiff either failed to acquaint himself with the subsoil conditions reflected by the plans or disregarded the probability of quicksand conditions. After careful examination of the record and study of the plan of the subsoil structure, we are unable to concur in these conclusions.
The plot plan of the test borings reflects a subsoil profile resulting from three separate core holes varying in depth from 50 to 75 feet. These profiles show that under an overlay of sandy clay several strata of sand existed. However, it is important to note that the profile gives no indication of any moisture content in the sand nor does it give the slightest indication that any stratum was of that nature which is commonly designated as quicksand. Nor, in fact, does the plan appear to indicate the relation of the three test borings to the elevator shaft.
Strangely enough, no employee of the Eustis Engineering Company was called as a witness. Defendant relied almost exclusively upon the testimony of Mr. U. M. Nolan, a member of the firm of Nolan, Norman, Architects of New Orleans, who prepared the plans and specifications. It is noteworthy that Mr. Nolan testified that he was not an expert on subsoil conditions and he admitted that the plan and profile as prepared by the Eustis firm did not indicate the presence of moisture in the sand. This witness took the position that plaintiff should have expected to encounter quicksand. The following extracts from his testimony are pertinent:
“Q. In other words, it is your testimony that there is sufficient information on page 1 of the plans —of the set of drawings as to the borings, the signs from borings and soil samples?.
*292 “A. I took that stand, yes, sir.
“Q. That a person contracting to build an elevator should have expected to encounter quicksand or abnormal soil?
“A. What is illustrated here on the plans is sufficient for any man who’s going to bore the ground, put a hole in it. To know that there is sand there, when there is sand there you can have water —it’s possible to have water and when you do have water, you possibly can have a quick condition. Yes, sir, there is ample information here for any man.
“Q. Do you know whether or not the Tri-State Elevator people checked this job to see if there were any unusual conditions before they started?
“A. No, sir.”
* * * * * *
“Q. Now, I believe you also testified that you, of your own knowledge, couldn’t say how frequently the the quicksand condition is encountered. I believe you also said that you had gotten from someone an indication that maybe ten per cent of the time, would a condition that you can reasonably expect to encounter ten per cent of the time be an unusual condition or would that be something that in preparing your bid you would make an extra allowance to take care of?
“A. To clarify the ten per cent, the ten per cent that I have in mind is a statistic that I recollect having read in correspondence of some sort in the file. It’s not my statistic * * (Emphasis supplied.)
The witness did not define the area upon which his hearsay estimate of the ten per cent chance of encountering quicksand was based.
As opposed to the testimony of the architect, Mr. J. D. Alexander, Jr., Vice President of plaintiff corporation, testified that the subcontractor’s estimate on the job was made after reference to the subsoil plan and upon the basis of this plan, as well as the experience of his firm in connection with a similar job which it had performed for the First Federal Savings and Loan building just across the street from the courthouse site.
After careful consideration of the testimony on this point we are convinced that plaintiff was not guilty of any neglect or lack of care, measured by standards of reason and prudence, in failing to anticipate the presence of quicksand. It necessarily follows that this development constituted an unusual condition as contemplated under the jack hole provision of the specifications. Upon the basis of this finding it is clear that plaintiff has adequately supported his right to additional payment.
There is another factor which adds to the weight of plaintiff’s claims. After encountering the quicksand conditions an authorized official of the plaintiff corporation consulted defendant’s representatives with reference to the resultant necessity for extra work. A letter was prepared, submitted to and signed by Jack Mixon, defendant’s superintendent on the courthouse job. The body of this communication directed to plaintiff reads as follows:
“You are hereby authorized to resume drilling of the elevator jack hole at our expense as outlined under paragraph - of the elevator specifications. Labor and additional material (casing) are included under the authorization.” (Emphasis supplied.)
In Mixon’s handwriting on this communication, referring to the blank space as above shown, is the following notation:
*293 “Look in Specs under Elevator Jack Hole, page 70.”
This notation, of course, refers to the jack hole clause as fully quoted in this opinion, supra. We can only conclude that this authorization must be interpreted in accordance with its plain wording and constituted an obligation on the part of defendant to bear the additional expense involved, subject to the provision of the jack hole clause.
Turning to consideration of the amount of plaintiff’s claim, we find that the several items consist of costs of labor, material, living expenses, travel and mileage for the employees, and the allowance of 15% on materials and incidental expenses provided by the contract, which items make up the total of $1,658.21.
It is true that Mr. Nolan, the architect, testified that, in his opinion, the claim for labor, shown as 90 team hours at $14.50 per hour aggregating $1,305.00, was grossly excessive. However, this witness further testified that he was not an expert on this particular nature of construction operation and it is clear that he had no first-hand knowledge of the amount of labor which was necessary and was actually performed by reason of the quicksand condition. There is also some testimony by the Secretary-Treasurer of the Winn Parish Police Jury and by the courthouse janitor to the effect that plaintiff’s employees were not diligent and workmanlike in the course of their labor, but this testimony is not of sufficient certainty and weight to overcome the positive testimony of plaintiff’s Vice-President and one of the employees who was engaged in the work.
For the reasons assigned, the judgment appealed from is annulled, set aside, and reversed, and
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Tri-State Elevator Company, Inc., and against the defendant, Rannie Terral, in the full sum of $1,658.21, together with legal interest from date of judicial demand until paid, and all costs of this suit in both courts.